UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/9/22
```

------------------------------------------------------------X

JTRE MANHATTAN AVENUE LLC and JTRE : 
807 MANHATTAN AVENUE LLC, :
                                         :
                      Plaintiffs, :
                -against- :                     21-CV-5714 (VEC)
                                           :
CAPITAL ONE, N.A., :                OPINION & ORDER
                                           :
                      Defendant. :

------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

      Plaintiffs JTRE Manhattan Avenue LLC and JTRE 807 Manhattan Avenue LLC ("JTRE") are New York-based limited liability companies that purchased the commercial building located at 807 Manhattan Avenue, Brooklyn, New York, in 2018, during which time Defendant Capital One, N.A. ("Capital One") was the sole tenant. Plaintiffs bring this action for breach of contract and negligent misrepresentation against Capital One for failing to disclose preexisting landlord defaults to JTRE prior to their purchase of the building and for failing to pay rent. Capital One has moved to dismiss the Second Amended Complaint in its entirety. For the reasons that follow, Capital One's motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

      On October 30, 2015, Capital One entered into a commercial lease with 807 Holdings for a condominium in the building located at 807 Manhattan Avenue, Brooklyn, New York (the "Building"). Second Am. Compl. ("SAC"), Dkt. 26 ¶ 17. The lease was for a term of twenty years; Capital One was the sole tenant and 807 Holdings was the landlord. SAC ¶¶ 17, 19, 48. In 2018, JTRE became interested in purchasing the Building. *Id*. ¶ 18. To that end, JTRE asked 807 Holdings to obtain an Estoppel Certificate from Capital One to determine whether Capital

1

One knew of any defaults under the lease or had any material complaints about the Building.  *Id.*
¶¶ 20–23.  The Certificate affirmed, in pertinent part, that "neither tenant, nor to tenant's
knowledge, the landlord, is in default under any of the terms and conditions of the Lease."
Sharovskiy Decl., Dkt. 39, Ex. A at 1.  The Certificate also affirmed that Capital One understood
that JTRE was "relying upon the representation" made.  *Id.* at 2.  Capital One issued an Estoppel
Certificate to JTRE on May 7, 2018.  SAC ¶ 2.  Shortly thereafter, JTRE bought
the Building and assumed the obligations of landlord under the Lease.  *Id.* ¶ 18.

Five months later, in October 2018, Capital One sent JTRE a notice of default claiming
several breaches of the Lease relating to inadequate heating in the Building.  *Id.* ¶ 29.  The notice
of default claimed that Capital One had incurred over $200,000 in supplemental heating costs
during the winter of 2017–2018 due to the Building's inadequate heat and demanded that JTRE
reimburse it for those costs.  *Id.* ¶¶ 29–30.  The alleged heating failures about which Capital One
complained had occurred while 807 Holdings owned the Building.  *Id.* ¶ 30.  Plaintiffs allege that
Capital One had previously provided 807 Holdings notice of the heating issues and was,
therefore, clearly aware of these deficiencies at the time it issued the Estoppel Certificate to
JTRE.  *Id.* ¶ 36.

In March of 2020, Capital One vacated the Building.  SAC ¶ 58.  From July 1, 2020,
through December 31, 2020, Capital One paid no rent.  *Id.* ¶¶ 59–74.  In December 2020, JTRE
delivered a written Notice to Cure to Capital One, demanding payment of the outstanding rent by
January 8, 2021.  *Id.* ¶¶ 67–68.  When Capital One failed to pay by the Cure Date, JTRE
declared a tenant default and terminated the lease.  *Id.* ¶¶ 67–73.

On June 3, 2021, JTRE commenced this action against Capital One in New York state
court, Def. Not. of Removal, Dkt. 1, Ex. 1; Capital One removed the case invoking diversity

jurisdiction pursuant to 28 U.S.C. § 1332(a).[1]  Def. Not. of Removal ¶ 4.  On September 2, 2021,

Plaintiffs filed a Second Amended Complaint ("SAC"), which is the operative pleading.  *See*

*generally* SAC, Dkt. 26.  The SAC alleges two causes of action: (1) breach of contract and (2)

negligent misrepresentation.  Plaintiffs allege that Capital One breached the lease agreement by

failing to pay rent and engaged in negligent misrepresentation when it returned the Estoppel

Certificate without notifying JTRE about its complaints of inadequate heat in the building.  *Id.* ¶¶

1–11.  Defendant moved to dismiss the SAC pursuant to Federal Rule of Civil Procedure Rule

12(b)(6).  *See generally* Not. of Mot., Dkt. 29.  Specifically, Defendant asserts that Plaintiffs

have (1) failed to state a claim for 20 years' worth of liquidated damages under their breach of

contract claim and (2) failed plausibly to allege the special relationship and falsity elements of

their negligent misrepresentation claim.  Def. Mem., Dkt. 30 at 5–8.  Plaintiffs oppose the

motion.  *See generally* Pls. Mem., Dkt. 38.

## DISCUSSION

### I.   Standard of Review

To survive a motion to dismiss for failure to state a claim upon which relief can be

granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In general, "a complaint does not need to

contain detailed or elaborate factual allegations, but only allegations sufficient to raise an

---

[1]   Plaintiffs have been less than careful in their jurisdictional allegations.  The Notice of Removal asserted that Capital One is a national bank and that its main office is in Virginia.  Not. of Removal, Dkt. 1, ¶ 6.  Thus, notwithstanding Plaintiffs' allegations in the Second Amended Complaint that Capital One has a principal place of business in New York and that one of the Plaintiffs has a member who resides in New York, SAC, Dkt. 26 ¶¶ 12–14, diversity jurisdiction exists.  A national bank is a citizen only of the state in which its main office is located, *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 219 (2d Cir. 2016); no member of any Plaintiff resides in Virginia, the state in which Capital One's main office is located.

entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).  When considering a Rule 12(b)(6) motion to dismiss, the Court draws all reasonable inferences in the light most favorable to the plaintiff.  *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted).  The Court is not required, however, to "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Although the parties agree that Plaintiffs' breach of contract claim is subject to the Rule 8(a) pleading standard, Defendant contends that Plaintiffs' negligent misrepresentation claim is subject to the heightened pleading standard of Rule 9(b).  Def. Mem. at 5.  There is debate within this Circuit over whether Rule 8(a) or Rule 9(b) governs claims of negligent misrepresentation. Although some courts have concluded that Rule 9(b) applies to "negligent misrepresentation claims that are premised on fraudulent conduct," the Second Circuit has not reached that question.  *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F.Supp.2d 162, 200 (S.D.N.Y. 2011) (collecting cases); *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004) (noting that Rule 9(b) "may or may not" apply to negligent misrepresentation claims).  This Court need not resolve the question of which pleading standard governs, however, because Plaintiffs have failed to plead sufficient facts to state a claim for negligent misrepresentation under either standard.

## II.   Negligent Misrepresentation

To state a claim for negligent misrepresentation under New York law,[2] "a plaintiff must assert '(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was

---

[2]        New York common law governs Plaintiffs' claims.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.'" *Eidelman v. Sun Prods. Corp.*, No. 16-CV-3914, 2017 WL 4277187, at \*4 (S.D.N.Y. 2017) (quoting *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012)).

The "duty" or "special relationship" element of negligent misrepresentation limits such claims to "situations involving 'actual privity of contract between the parties or a relationship so close as to approach that of privity.'" *Anschutz Corp.*, 690 F.3d at 114 (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 271 (2d Cir. 1993)). "[L]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996).

In the commercial context, whether a special relationship exists turns on three factors: whether the defendants "held or appeared to hold unique or special expertise"; whether there is a special relationship of "trust or confidence"; and whether the "speaker was aware of the use to which the information would be put and supplied it for that purpose." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697, 2016 WL 6459832, at \*8 (S.D.N.Y. 2016) (citing *Kimmel*, 89 N.Y.2d at 263).[3]  "New York courts do not recognize a cause of action for negligent misrepresentation in the absence of some special relationship of trust or confidence between the

---

[3]     Plaintiffs rely on the wrong test for alleging a "special relationship" in this context.  Def. Mem. at 15–16. The test for determining whether a "special relationship" exists differs in the commercial and professional contexts. *See, e.g., Kimmell*, 89 N.Y.2d at 263–64 (discussing both tests).  The professional context is unique because "[p]rofessionals, such as lawyers and engineers, by virtue of their training and expertise, may have special relationships of confidence and trust with their clients . . . ." *Id*. at 263.  "The analysis in a commercial case . . . is necessarily different . . . because of the absence of obligations arising from the speaker's professional status."  *Id*. at 264.  This case fits squarely in the commercial context.

parties." *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 778 (S.D.N.Y. 2011) (quoting *Accusystems, Inc. v. Honeywell Info. Sys., Inc.*, 580 F. Supp. 474, 480 (S.D.N.Y. 1984)).

Plaintiffs' SAC fails to allege facts from which the Court can plausibly infer that a "special relationship," as defined by relevant precedent, existed between JTRE and Capital One. First, the SAC fails to allege sufficiently that Capital One had unique or special expertise as to 807 Holdings' potential defaults. Accepting the facts in the SAC as true, at the time the Estoppel Certificate was issued, Capital One had already requested reimbursement from 807 Holdings for its supplemental heating costs. SAC ¶ 36. Thus, at least by that point, 807 Holdings also knew of the Building's heating issues. JTRE does not allege that it asked 807 Holdings whether it was aware of any potential defaults, nor does it allege that it conducted an independent investigation of the Building's general condition prior to agreeing to buy the building or closing on the purchase. *See, e.g., Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1016 (2d Cir. 1989) ("Where the representation relates to matters that are not peculiarly within the [defendant's] knowledge and both parties have available the means of ascertaining the truth, New York courts have held that the complaining party should have discovered the facts and that any reliance under such circumstances therefore would be unjustifiable."). Because Capital One's knowledge of the alleged defaults was neither unique nor specialized, Plaintiffs' conclusory claims that Plaintiffs "did not know, and could not have known" of the Building conditions without Capital One's disclosure are not plausible. SAC ¶ 37.

Second, the SAC does not allege facts from which the Court can plausibly infer that JTRE and Capital One had a special relationship of trust or confidence. Delivery of the Estoppel Certificate was an arm's length business transaction between sophisticated parties, "a circumstance insufficient to create a 'special relationship.'" *Amusement Indus.*, 786 F. Supp. 2d

at 779.  The parties had no relationship prior to the delivery of the Estoppel Certificate.  *See, e.g.,*
*id.* at 779 (finding no special relationship where the parties had no prior existing relationship); *M*
*& T Bank Corp. v. Gemstone CDO VII, Ltd.*, 891 N.Y.S.2d 578, 581 (4th Dep't 2009) (finding
no special relationship where "the parties had no relationship prior to this arms-length
transaction").  Nor does the Estoppel Certificate itself create a relationship of trust or confidence.
*See, e.g., Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt.*, LLC, 692 F.3d 42, 58
(2d Cir. 2012) ("Under New York law, a breach of contract will not give rise to a tort claim
unless a legal duty independent of the contract itself has been violated.").  Because the parties
did not have a relationship prior to this arm's-length transaction, there was no special
relationship of trust or confidence.

Third and finally, Plaintiffs' allegation that Capital One "knew and confirmed in writing
that JTRE would rely on the estoppel certificate," while a closer call, fails to rescue Plaintiffs'
negligent misrepresentation claim.  SAC ¶ 98.  The Estoppel Certificate attests that "[n]either
Tenant, nor to Tenant's knowledge, Landlord, is in default under any of the terms and conditions
of the Lease."  Sharovskiy Decl., Ex. A ¶ 5.  It further states that "[t]his certification is made
knowing that Purchaser, its lender and their representative successors and assigns are relying
upon the representation herein made."  *Id*. at 2.  Although the Court is not required to "accept as
true a legal conclusion couched as a factual allegation," *see Iqbal*, 556 U.S. at 678, the plain
meaning of these paragraphs, read together, is that Capital One confirmed its awareness that
JTRE would rely on its affirmation that neither itself, nor, to its knowledge, 807 Holdings, was in
default under the terms of the Lease.

The plain language of the Certificate notwithstanding, successful negligent
misrepresentation claims in New York typically demonstrate not only that the defendant was

aware of plaintiff's reliance, but that it urged the plaintiff to rely on its alleged

misrepresentations.  *See, e.g.*, *Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87,

103–04 (finding a special relationship where defendant contacted plaintiffs, provided

information for a particular purpose, and urged plaintiffs to rely on their assessments); *Kimmel*,

89 N.Y.2d at 263 (finding a special relationship where defendant urged plaintiffs to rely on its

projections); *Phoenix Cos., Inc. v. Concentrix Ins. Admin. Sols. Corp.*, No. 20-CV-1738, 2021

WL 3604663, at *13 (S.D.N.Y. Aug. 8, 2021) (finding no special relationship where plaintiff

failed to demonstrate that defendant urged it to rely on the alleged misrepresentations).

Although, accepting the facts in the SAC as true, Capital One knew JTRE would rely on the

Estoppel Certificate, the SAC does not allege that Capital One urged Plaintiffs to rely on its

representation, aside from signing the Certificate.  *See generally* SAC, Dkt. 26.  In any case, the

satisfaction of this factor alone is not a lifeline onto which Plaintiffs' negligent misrepresentation

claim can viably cling.

      While the existence of a special relationship is an inherently fact-specific inquiry, the

Second Circuit has held that where a plaintiff fails to plead a "special relationship of trust or

confidence," and "the allegations with respect to the other *Kimmell* factors are soft," a claim for

negligent misrepresentation can be dismissed pursuant to Rule 12(b)(6).  *Eternity Glob. Master

Fund Ltd.*, 375 F.3d at 188.  Here, the SAC fails to allege facts from which the Court can infer

that there was a special relationship of trust or confidence between the parties or that Capital One

possessed unique or specialized knowledge about potential Landlord defaults under the lease.

Although sufficient factual matter might exist to support the allegation that Capital One knew

that JTRE would rely on its representations in the Estoppel Certificate, that alone is not enough

to overcome the weakness of the other two *Kimmel* factors necessary to establish the existence of

8

a special relationship.  *See Amusement Indus.*, 786 F. Supp. 2d at 779 (finding no special

relationship where reliance factor was sufficiently pled but the two other *Kimmel* factors were

lacking).

Because JTRE has not adequately alleged facts from which the Court can plausibly infer

the existence of a "special relationship" between JTRE and Capital One, Plaintiffs' negligent

misrepresentation claim must be dismissed regardless of whether Rule 8(a) or Rule 9(b) applies.

Because Plaintiffs have failed to allege adequately the first element of a *prima facie* case of

negligent misrepresentation, the Court need not address whether the falsity element was pled

with sufficient particularity.  *See* Def. Mem. at 5–7; Pls. Mem. at 11–15.  Accordingly,

Defendant's motion to dismiss is granted as to Plaintiffs' negligent misrepresentation claim, and

that portion of their SAC is dismissed with prejudice.

## III.    Breach of Contract

Defendant also moves to dismiss Plaintiffs' breach of contract claim.  Defendant does not

argue that there was no breach of contract but only that the SAC fails to state a claim for the 20

years' worth of liquidated damages sought by Plaintiffs.  Def. Mem. at 3.  In its Notice of

Motion, Defendant seeks dismissal of the breach of contract claim in its entirety with prejudice,

Not. of Mot. at 1, while its Memorandum of Law argues only for dismissal of Plaintiffs' claim

for liquidated damages, Def. Mem. at 3.  Although Defendant does not make clear exactly what

form of relief it is requesting, the Court will address both the sufficiency of Plaintiffs' claim for

breach of contract and its demand for liquidated damages.  Even if Plaintiffs have failed to state a

claim for 20 years' worth of liquidated damages, that insufficiency would not result in a

dismissal of their breach of contract claim.

To state a claim for breach of contract under New York law, the plaintiff must allege "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015). On a motion to dismiss, the Court may dismiss a breach of contract claim for failure to state a claim if the terms of the contract are unambiguous and the "plain language" of the contract contradicts or fails to support the plaintiff's allegations of breach. *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156–58 (2d Cir. 2016).

It is undisputed that the first element has been met, as the parties appear to agree that the Lease Agreement was a valid contract. As to the second element, JTRE asserts that "in all material respects [it] complied with its obligations under the Lease." SAC ¶ 78. Accepting the factual allegations in the SAC as true, JTRE has sufficiently alleged that it was not responsible for maintaining the heating system in the Building, and, therefore, any heating deficiencies did not violate the terms of the Lease.[4] Thus, JTRE has adequately alleged that it performed its obligations under the Lease.

Plaintiffs allege that Defendant breached the Lease Agreement by failing to pay its minimum monthly and additional rents. SAC ¶¶ 59–66. The SAC sets forth facts indicating that Capital One failed to pay rent from July 1, 2020, through December 1, 2020. *Id.* The SAC further alleges that Capital One failed to pay its past due rent by January 8, 2021, the Cure Date set by JTRE, and, as a result, JTRE terminated the Lease. *Id.* ¶¶ 67–71. The Lease Agreement provides that failure by the Tenant to pay rent for more than ten days after its due date qualifies as a "Tenant Default," in response to which the Landlord may choose to terminate the Lease.

---

[4]     Section 10.1 of the Lease states, "*Tenant* shall maintain the heating, ventilating, and air-conditioning system (including, without limitation, the maintenance and replacement of the boiler unit)." Spears Decl., Dkt. 25, Ex. 1 § 10.1 (emphasis added).

Spears Decl., Dkt. 25, Ex. 1, §§ 20.1, 20.2.  The plain language of the contract supports

Plaintiffs' allegation that Capital One breached the Lease.  Therefore, JTRE has sufficiently

alleged that Capital One failed to perform its obligations under the Lease, satisfying the third

element of its breach of contract claim.

      Finally, JTRE has set forth sufficient factual matter demonstrating that it is entitled to

damages under the fourth element.  JTRE claims $404,212.70 in damages for rent due but not

paid from July 1, 2020, to December 31, 2020.  SAC ¶ 74.  The Court might end its inquiry here,

as stating some form of damages is all that is required to plead a *prima facie* claim of breach of

contract.  *See Orlander*, 802 F.3d at 294.  Nevertheless, the parties raise several issues regarding

Plaintiffs' claim for liquidated damages that should be addressed.

      In addition to past due rent, Plaintiffs claim that they are entitled to liquidated damages

through the unexpired portion of the Lease Term, including future rent through October 2035.

SAC ¶¶ 55–56.  The parties dispute when the Lease expires.  Defendant asserts that it exercised

its early termination right under the Lease, shifting the end of the Lease from October 30, 2035,

to October 30, 2021.  Def. Mem. at 3.  In support of that assertion, Defendant submitted two

letters which purport to evidence its exercise of its early termination right under the Lease.  *See*

Kellar Decl., Dkt. 31, Exs. 1–2.  Defendant contends that an Expiration Date of October 30, 2021

"eviscerates" Plaintiffs' claim by proving that they are not entitled to liquidated damages through

2035.  Def. Reply, Dkt. 42 at 1.

      Plaintiffs maintain, however, that the "Expiration Date" and "Lease Term" are separate

provisions, and that, even if Defendant advanced the "Expiration Date" when it exercised its

early termination right, the "Lease Term" would nevertheless last until October 30, 2035,

preserving the claim they asserted for 20 years' worth of liquidated damages.  Pls. Mem. at 4–6.

Plaintiffs also argue that the Court may not consider the early termination issue because doing so would involve relying upon documents extrinsic to the pleadings, specifically, the two letters submitted by Defendant.[5]  *Id*. at 7–11.

Defendant's argument that its purported exercise of the early termination right "eviscerates" Plaintiffs' claim for liquidated damages is unavailing.  Even if the Expiration Date shifted to October 30, 2021, the plain language of the Lease Agreement indicates that Plaintiffs, if successful in their breach of contract claim, would still be entitled to certain liquidated damages.  SAC ¶ 56.  Even if Defendant ultimately has the better argument regarding the period of time for which it must pay rent, Section 20.2 of the Lease Agreement specifies that the Landlord is entitled to other types of damages upon a Tenant breach of the Lease, including attorneys' fees associated with enforcing the Agreement and reasonable costs associated with repairs and re-letting.  Sharovskiy Decl., Ex. A § 20.2.  Thus, the question is not whether Plaintiffs are entitled to almost $7.5 million in liquidated damages, but whether, taking the facts alleged in the SAC as true, Defendant's alleged breach has caused damages, the amount of which may be determined at a later stage of litigation.  *See Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991).  Although Plaintiffs may or may not be able to collect rent from Capital One through October 2035, they have set forth sufficient facts from which the Court can infer that they are entitled to some amount of damages.  At this juncture, limiting the scope of damages is not appropriate.

---

[5]       The Court need not determine whether the documents submitted by Defendant are appropriate for consideration at the pleadings stage because they are irrelevant in determining whether Plaintiffs have stated a claim for liquidated damages.  Additionally, Defendant asserts that the Court may treat its motion, in the alternative, as one for summary judgment pursuant to Federal Rule of Civil Procedure 12(d).  Def. Reply at 3.  The Court declines to do so.

**CONCLUSION**

For the foregoing reasons, JTRE's claim against Capital One for negligent misrepresentation is dismissed with prejudice.  JTRE's claim for breach of contract, however, survives.  Therefore, the stay on discovery that the Court ordered on October 21, 2021, *see* Dkt. 41, is hereby LIFTED.  A pretrial conference is scheduled for **Friday, February 25, 2022, at 11:00 a.m.** in **Courtroom 443**, Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007.  Not later than Thursday, **February 17, 2022,** the parties are ordered to submit (i) a joint letter of no more than five pages and (ii) proposed amendments to the Case Management Plan in accordance with the Court's order at Dockets 22 and 41.

The Clerk of Court is respectfully directed to close the open motion at Docket 29.

**SO ORDERED.**

Date:  February 9, 2022
       New York, New York

                                        **VALERIE CAPRONI**
                                        **United States District Judge**