**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JTRE MANHATTAN AVENUE LLC and<br>JTRE 807 MANHATTAN AVENUE LLC,<br><br>*Plaintiffs/Counter-Defendants*,<br><br>v.<br><br>CAPITAL ONE, N.A.,<br><br>*Defendant/Counterclaimant.* | Case No. 1:21CV5714 (JLR) |

**DEFENDANT/COUNTERCLAIMANT'S COMBINED MEMORANDUM IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION
TO PLAINTIFF/COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

John D. Wilburn (*Pro Hac Vice*)
Brooks H. Spears (*Pro Hac Vice*)
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102
Phone: (703) 712-5000
Fax: (703) 712-5282
jwilburn@mcguirewoods.com
bspears@mcguirewoods.com

Anastasia P. Cordova
McGuireWoods LLP
1345 Avenue of the Americas, 20th Floor
New York, NY 10020
Phone: (212) 548-2100
Fax: (212) 548-2150
acordova@mcguirewoods.com

Bryan A. Fratkin (*Pro Hac Vice*)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Phone: (804) 775-1000
Fax: (804) 775-1061
bfratkin@mcguirewoods.com

Sheila E. Calello
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Phone: (973) 639-6931
Fax: (973) 624-7070
scalello@mccarter.com

*Counsel for Defendant/
Counterclaimant Capital One, N.A.*

Dated: March 14, 2023

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

STANDARD OF REVIEW ................................................................................. 3

ARGUMENT ....................................................................................................... 3

I.     JTRE Undisputedly Breached Sections 8.3, 10.4, and 12.2(a) of the Lease by Failing to Provide Adequate Heat ................................................................. 4

     A.     JTRE's contractual obligation to provide adequate heat is undisputed ................ 4

     B.     JTRE's breach of its obligation to provide adequate heat is undisputed .............. 5

     C.     There is no dispute that JTRE received notice of the inadequate heat and *agreed* with Capital One's complaints ................................................................. 5

II.     JTRE Undisputedly Breached Sections 8.3, 10.2, 10.4, and 12.2(a) of the Lease by Failing to Repair the Roof Leaks ......................................................... 8

     A.     JTRE's contractual obligation to repair the roof leaks is undisputed ................... 8

     B.     JTRE's breach of its obligation to repair the roof leaks is undisputed ................. 8

     C.     There is no dispute that JTRE received notice of the roof leaks and *agreed* with Capital One's complaints ................................................................. 9

III.     JTRE Undisputedly Breached Sections 29 and 34.1 of the Lease by Allowing Disruptive Construction During Business Hours and Causing the Bank to Close ..................................................................................................... 10

     A.     Capital One was undisputedly forced to close the branch on November 2, 2018 ................................................................................................................ 11

     B.     Capital One was undisputedly forced to close the branch on February 26, 2019 ................................................................................................................ 11

     C.     Capital One was undisputedly forced to close the branch on July 17, 2019 ....... 11

     D.     Capital One was undisputedly forced to shut down the ATMs on July 23, 2019 ................................................................................................................ 12

IV.     JTRE Undisputedly Breached Section 21.1 of the Lease by Failing to Reimburse Capital One ..................................................................................... 12

V.     Because of Its Undisputed Breaches, JTRE Cannot Prevail on Its Breach of Contract Claim Against Capital One ................................................................. 13

VI.     Capital One's Notices Were Valid ..................................................................... 14

     A.     New York law does not require strict compliance with a notice provision where, as here, the recipient received actual notice and claims no prejudice ...... 15

# TABLE OF CONTENTS
(continued)

Page

B.      Capital One did not send its notices to the wrong address ................................. 17

C.      Section 21.1 of the Lease prescribes the cure period............................................ 19

D.      The Lease did not obligate Capital One to use the word "default" in its notices, but Capital One did so anyway.......................................................... 20

E.      The Lease did not obligate Capital One to expressly reserve its right to terminate the Lease in its notices, but Capital One did so anyway...................... 20

VII.    Even if JTRE Did Not Breach, Capital One Exercised Its Right to Change the Expiration Date to October 31, 2021 ...........................................................21

VIII.   The Tenant Estoppel Certificate Does Not Absolve JTRE from Liability Under the Lease .......................................................................................................23

IX.     The Lease Did Not Obligate Capital One to Remove JTRE's Vaults ..............................24

CONCLUSION...................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. Dubois & Son v. Goldsmith Bros.*,
    273 A.D. 306 (N.Y. App. Div. 1st Dep't 1948).....................................................16

*Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*,
    578 F. Supp. 3d 467 (S.D.N.Y. 2022)........................................................................3

*Am. Home Prods. Corp. v. CAMBR Co.*,
    No. 00 Civ.2021 (VM), 2001 WL 79903 (S.D.N.Y. Jan. 30, 2001)........................19

*Bergh v. Herring-Hall-Marvin Safe Co.*,
    136 F. 368 (2d Cir. 1905) ........................................................................................24

*Brueckner v. You Can Beam LLC*,
    No. 20-CV3323 (JSR), 2021 WL 2158733 (S.D.N.Y. May 27, 2021) .....................16

*CAI Rail, Inc. v. Badger Mining Corp.*,
    No. 20 Civ. 4644 (JPC), 2021 WL 705880 (S.D.N.Y. Feb. 22, 2021)....................17

*Carrier Svcs., Inc. v. Omni Mail, Inc.*,
    No. 98 Civ. 9197 (CSH), 2000 WL 1072300 (S.D.N.Y. Aug. 3, 2000)..................14

*Contemporary Mission, Inc. v. Famous Music Corp.*,
    557 F.2d 918 (2d Cir. 1977).....................................................................................14

*Core Svcs. Grp., Inc. v. Teams Hous. Dev. Corp. Fund, Inc.*,
    No. 654438/2013, 2016 WL 4490626 (N.Y. Sup. Ct. Aug. 25, 2016)...................16

*E. Side Car Wash, Inc. v. K.R.K. Capitol, Inc.*,
    102 A.D.2d 157 (N.Y. App. Div. 1st Dep't 1984).................................................24

*Eastman Kodak Co. v. STWB Inc.*,
    232 F. Supp. 2d 74 (S.D.N.Y. 2002).......................................................................14

*Ives v. Mars Metal Corp.*,
    196 N.Y.S. 2d 247 (N.Y. Sup. Ct. 1959) ...............................................................15

*JTRE Manhattan Avenue LLC v. Capital One, N.A.*,
    No. 21-CV5714 (VEC), 2022 WL 2901402 (S.D.N.Y. July 22, 2022)..................15

*LG Cap. Funding, LLC v. MineralRite Corp.*,
    No. 16 Civ. 6158 (PKC) (VMS), 2017 WL 9250297 (E.D.N.Y. Dec. 1, 2017)....................16

*McKinney v. City of Middletown*,
  49 F.4th 730 (2d Cir. 2022) ....................................................................3

*Moreno-Godoy v. Kartagener*,
  7 F.4th 78 (2d Cir. 2021) ......................................................................14

*MyPlayCity, Inc. v. Conduit Ltd.*,
  No. 10 Civ. 1615(CM), 2012 WL 1107648 (S.D.N.Y. Mar. 30, 2012)..................................14

*OneWest Bank, N.A. v. Rubio*,
  No. 14-CV-3800 (CS), 2015 WL 5037111 (S.D.N.Y. Aug. 26, 2015) ..............................1, 16

*Rockland Exposition, Inc. v. Alliance of Auto. Svc. Providers*,
  706 F. Supp. 2d 350 (S.D.N.Y. 2009)....................................................................14

*Schweizer v. Sikorsky Aircraft Corp.*,
  634 F. App'x 827 (2d Cir. 2015) .........................................................................15

*Suarez v. Ingalls*,
  282 A.D.2d 599 (N.Y. App. Div. 2d Dep't 2001) ...................................................15

*Thor 680 Madison Ave. LLC v. Qatar Luxury Grp. S.P.C.*,
  No. 17 Civ. 8528 (PGG), 2020 WL 2748496 (S.D.N.Y. May 27, 2020) .........................15, 18

*Thor 725 8th Ave. LLC v. Goonetilleke*,
  138 F. Supp. 3d 497 (S.D.N.Y. 2015).................................................................16, 17

*Vista Outdoor Inc. v. Reeves Family Tr.*,
  725 F. App'x 17 (2d Cir. 2015) ..........................................................................15

*Williams v. MTA Bus Co.*,
  44 F.4th 115 (2d Cir. 2022) ..................................................................................3

**Other Authorities**

Fed. R. Civ. P. 56(a) .....................................................................................3

Local Civil Rule 7.1(a)(2) and 7.1(b) ...................................................................1

*Random House Dictionary* (2d ed. 1987) ................................................................19

Defendant/Counterclaimant Capital One, N.A. ("Capital One"), pursuant Local Civil Rule 7.1(a)(2) and 7.1(b), submits this combined memorandum in support of its motion for summary judgment and in opposition to the motion for summary judgment filed by Plaintiffs/Counter-Defendants JTRE Manhattan Avenue LLC and JTRE 807 Manhattan Avenue LLC (collectively, "JTRE").

## INTRODUCTION

JTRE plays in the high-risk arena of commercial real estate in New York City.  In 2018, it bought one-half of a century-old old building whose other half was being converted into a residential condominium.  Capital One was a tenant in JTRE's portion of the building and had operated a retail bank branch there for nine years before JTRE bought the property and assumed the lease.  The building had many problems after JTRE bought it.  The roof leaked, the HVAC did not work, the bathrooms lacked hot water, and the constant noise, vibrations, dust, and odors from the neighboring construction interrupted Capital One's business operations.

Capital One asked JTRE, as its landlord, to fix these problems.  JTRE did not do so. Instead, it demanded that the neighboring owner who was building the condominium unit fix the problems.  But the neighboring condo owner also refused to do so, and so the problems persisted. Capital One could not operate a first-class bank branch in New York City while its employees and customers froze, water and debris fell from the ceiling, and noise and vibrations permeated the space.

After nearly two years of dealing with these relentless issues, Capital One notified JTRE that it was terminating the lease for default as of June 30, 2020.  Capital One also exercised its right to convert the twenty-year lease term into a six-year term by moving the expiration date up to October 31, 2021.  The net result was that, even if the lease did not terminate for cause on June

30, 2020, which it did, it nonetheless expired on October 31, 2021, pursuant to Capital One's contractual option.

JTRE contends that it did not default on the lease.  But that position contradicts the undisputed record evidence.  JTRE has admitted its obligation to maintain the roof, as well as its failure to do so.  It has likewise admitted its responsibility for providing heat, while also admitting that the temperature frequently dropped below the minimum threshold established by the New York City Building Code and incorporated into the lease.  Nor does JTRE dispute that it failed to ensure Capital One's quiet enjoyment of the space and failed to prevent the neighboring condo owner from doing construction during business hours.  Finally, it is undisputed that JTRE refused to reimburse Capital One for costs that Capital One incurred for the repairs and equipment that were JTRE's responsibility.

With these admissions, JTRE has resorted to a hyper-technical and incorrect reading of the notice provision in the lease.  Even if JTRE defaulted, it says, Capital One's notices of termination were technically invalid because Capital One sent them to JTRE's counsel rather than send them to JTRE directly.  JTRE waves off the fact that its attorney forwarded the notices to JTRE within minutes of receiving them.  And, despite being asked repeatedly in discovery, JTRE has never articulated any prejudice that it suffered from Capital One's supposed failure to follow the lease's notice provision.  Every court in New York has held that strict compliance with a contractual notice provision does not apply if the recipient actually received the notice and does not claim prejudice resulting from the deviation.  Those are the undisputed facts of this case, which means that JTRE's strict compliance argument does not hold up.

JTRE's final contention is that Capital One should have removed two vaults from the building when it left.  The plain language of the lease does not mention any vaults, but it does

require Capital One to remove "trade fixtures."  Under New York law, the term "trade fixtures" has a settled definition that applies only to equipment installed by the tenant during its tenancy. Here, it is undisputed that Capital One did not install the vaults, which is dispositive to this portion of JTRE's claim.

The Court should award (i) summary judgment to Capital One on JTRE's claim, and (ii) partial summary judgment to Capital One as to JTRE's liability on Capital One's counterclaim.

## STANDARD OF REVIEW

"Summary judgment is proper when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022) (quoting Fed. R. Civ. P. 56(a)).  "The rule permits a court to grant partial summary judgment with respect to liability on a breach of contract claim . . . ."  *Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 578 F. Supp. 3d 467, 486 (S.D.N.Y. 2022). "As to cross-motions, the district court evaluates each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Williams v. MTA Bus Co.*, 44 F.4th 115, 125 (2d Cir. 2022) (internal quotation marks omitted).

## ARGUMENT

JTRE undisputedly breached at least seven provisions of the Lease.  Any one of those breaches entitles Capital One to partial summary judgment as to liability on its breach of contract counterclaim.  And because JTRE's many breaches occurred long before Capital One vacated the building and stopped paying rent, Capital One is also entitled to summary judgment on JTRE's claim.  But even assuming JTRE fully performed under the Lease, Capital One undisputedly exercised its contractual right to advance the Lease expiration date to October 31, 2021.  Capital

One is therefore entitled to at least partial summary judgment that it owed no rent payments after the Lease expired.  Finally, nothing in the unambiguous language of Section 14 of the Lease imposed an obligation on Capital One to remove JTRE's vaults from the building, and Capital One is entitled to summary judgment on that portion of JTRE's claim.

I.    **JTRE Undisputedly Breached Sections 8.3, 10.4, and 12.2(a) of the Lease by Failing to Provide Adequate Heat.**

There is no genuine dispute of fact that JTRE breached Sections 8.3, 10.4, and 12.2(a) of the Lease by failing to provide adequate heat during the cold seasons in 2018-2019 and 2019-2020. Under Section 8.3, JTRE promised to "operate and maintain the Manhattan Avenue Building in accordance with the Comparable Building Standard[.]"  *See* Capital One's Statement of Undisputed Facts ("SUF") ¶ 36.  Under Section 10.4, JTRE similarly promised to "maintain, or cause to be maintained, the Manhattan Avenue Building . . . in a manner consistent with the practices of a majority of owners of comparable commercial buildings in the general geographic area of the Premises, as the term is understood in the general geographic area of the Property (the "Comparable Building Standard")[.]"  (Emphasis omitted).  *See id.* ¶ 37.  Finally, Section 12.2(a) provided that: "[JTRE] shall at all times operate and maintain the Manhattan Avenue Building in accordance with the Comparable Building Standard."  *See id.* ¶ 38.

A.    **JTRE's contractual obligation to provide adequate heat is undisputed.**

JTRE's failure to maintain a minimum temperature of 68˚F fell short of the Comparable Building Standard as incorporated into the Lease.  The undisputed evidence is that the majority of building owners of comparable buildings in New York City followed the New York City Building Code with respect to ensuring minimum interior temperatures.  *See id.* ¶ 40.

Section 1204.1 of the NYC Building Code provides: "Interior spaces intended for human occupancy shall be provided with active or passive space-heating systems capable of maintaining

a minimum temperature as indicated in Table 1204.1 . . . ."  *See id.* ¶ 43.  In turn, Table 1204.1

provides that buildings like banks require a minimum temperature of 68˚F.  *See id.* ¶ 44.  The

unrebutted opinion of Capital One's HVAC expert, Christopher J. Sheridan ("Sheridan"),

establishes that the NYC Building Code "indicates that the minimum space temperature for offices

and spaces where persons are engaged in sedentary activities is 68 degrees."  (Emphasis omitted).

*See id.*

JTRE agreed with Sheridan's opinion about the Comparable Building Standard, and it

agreed that the Comparable Building Standard required a properly functioning HVAC system that

produced adequate heat.  *See id.* ¶ 45.  JTRE further agreed as to its contractual obligation to

provide Capital One with heating.  *See id.* ¶ 39.  Therefore, JTRE's legal obligation to provide

adequate heat is undisputed.

### B.     JTRE's breach of its obligation to provide adequate heat is undisputed.

JTRE did not operate or maintain the Manhattan Avenue Building to ensure a minimum

temperature of 68˚F.  The undisputed evidence confirms that the temperature inside the Manhattan

Avenue Building often fell below 68˚F during the cold seasons of 2018-2019 and 2019-2020.  *See*

*id.* ¶¶ 46-53.  This undisputed evidence includes JTRE's own admissions that "the heat at the

premises was substandard and not functioning correctly," and that there was "lack of proper

heating."  *See id.* ¶ 54.  Thus, JTRE's breach is undisputed.

### C.     There is no dispute that JTRE received notice of the inadequate heat and *agreed* with Capital One's complaints.

It is also undisputed that JTRE received Capital One's multiple notices of the inadequate

heat, and that JTRE agreed with Capital One's allegations.  On October 19, 2018, Capital One sent

notice of JTRE's "failure to meet its contractual obligation set forth in the Lease relating to the

maintenance of the Demised Premises in good and working order and repair and in accordance

with the Comparable Building Standard." *See id.* ¶ 55.  In its notice, Capital One enumerated

numerous issues, including the "lack of proper heating" in violation of Section 10.4 of the Lease.

*See id.*  JTRE undisputedly received Capital One's notice and undertook an investigation.  *See id.*

¶ 56.  As a result of its investigation, JTRE *agreed* with Capital One that the heating "needed to

be addressed." *See id.* ¶ 57.

On December 20, 2018, Capital One sent another notice to JTRE through counsel.  *See id.*

¶ 58.  Capital One notified JTRE that, among other things, "there is little to no heat in the winter"

in violation of Section 8.3 of the Lease.  *See id.*  JTRE admitted that it reviewed this notice and

*agreed* with Capital One's allegations.  *See id.* ¶ 59.

On July 19, 2019, Capital One sent another notice to JTRE through counsel.  *See id.* ¶ 60.

The notice reiterated Capital One's concerns about the "non-functioning HVAC system." *See id.*

The notice went on to state: "[I]n a few months it appears as if the Bank will enter its third winter

in the Leased Space without a proper heating system.  Despite repeated demands and no dispute

that the Leased Space requires supplemental heating, neither JTRE nor the Original Landlord nor

807 MA have reimbursed a dime to the Bank [or] presented a plan as to how the defects in the

HVAC system will be cured." *See id.*  There is no dispute that JTRE received this notice.  *See id.*

¶ 61.  Moreover, JTRE once again *agreed* with Capital One's allegations.  *See id.*

On December 12, 2019, Capital One notified JTRE through counsel that "the temperature

in the ATM room has dropped to 57 degrees, which is unacceptable." *See id.* ¶ 62.  There is no

dispute that JTRE received this notice.  *See id.* ¶ 63.  As with all of Capital One's notices, JTRE

*agreed* with Capital One's allegations.  *See id.*

On January 8, 2020, Capital One sent another notice to JTRE through counsel.  *See id.* ¶

64.  Once again, Capital One explained that "the defective status of the HVAC system has

continued" and that "the temperature dropped to 61 degrees."  *See id.*  It is undisputed that JTRE

received this notice.  *See id.* ¶ 65.  And, as before, JTRE *agreed* with Capital One's allegations.

*See id.*

On February 25, 2020, Capital One sent a final notice to JTRE through counsel.  *See id.* ¶

66.  The notice explained: "For the third winter in a row, the Lease Space still does not have a

properly-function[ing] HVAC system, and JTRE is plainly responsible for that system for the

reasons set forth in the Bank's January 8, 2020 letter and pursuant to Section 10.4 and Exhibit H

of the Lease . . . ."  *See id.*  The notice further alleged: "In breach of Section[s] 8.3 and 10.4 of the

Lease, JTRE failed to maintain the Leased Space in accordance with comparable building

standards."  *See id.*  It is undisputed that JTRE received this notice.  *See id.* ¶ 67.  Finally, as with

each of Capital One's multiple notices, JTRE *agreed* with Capital One's allegations.  *See id.*

\* \* \*

As demonstrated, there is no genuine dispute of material fact that JTRE breached its

contractual obligations in Sections 8.3, 10.4, and 12.2(a) of the Lease by failing to provide

adequate heat to maintain a minimum temperature of 68˚F.  Nor is there any genuine dispute that

JTRE received multiple notices of its breach, that it agreed with the allegations in each of the

notices, and that it failed to cure.  Therefore, Capital One is entitled to partial judgment as a matter

of law that JTRE is liable for the breach of contract counterclaim based on its failure to provide

adequate heat.

## II.     JTRE Undisputedly Breached Sections 8.3, 10.2, 10.4, and 12.2(a) of the Lease by Failing to Repair the Roof Leaks.

There is no genuine dispute of material fact that JTRE breached the Lease by failing to

repair the persistent roof leaks.  Under Section 10.2, JTRE was obligated to "keep, maintain, and

replace . . . the roof, roof membrane, [and] roof covering . . . ."[1]  *See id.* ¶ 69.  Additionally, JTRE owed Capital One an obligation to operate and maintain the Manhattan Avenue Building in accordance with the Comparable Building Standard.  *See id.* ¶¶ 70-71.

### A.    JTRE's contractual obligation to repair the roof leaks is undisputed.

There is no dispute about JTRE's obligations.  The undisputed evidence is that the majority of building owners of comparable buildings in New York City promptly repaired roof leaks.  *See id.* ¶ 72.  JTRE has conclusively admitted that it owed Capital One an obligation to maintain the roof.  *See id.* ¶ 73.  Thus, JTRE's obligation to repair the roof is undisputed.

### B.    JTRE's breach of its obligation to repair the roof leaks is undisputed.

The parties agree that the roof leaked.  *See id.* ¶¶ 74-82, 94.  Capital One's expert architect, Richard J. Vivenzio, further opined that (i) "repairs were needed to fix the chronic water infiltration from the roof," (ii) there were "numerous deficiencies at the roof level capable of contribution to water infiltration into the Bank space, (iii) "roof maintenance was lacking," (iv) "[t]he documented roof leaks caused plaster and paint separation at the ceiling surrounding the dome," and (v) "the Bank premises were not properly maintained to support employees and the public to safely occupy the space."  *See id.* ¶ 82.  Vivenzio's expert opinions are unrebutted.  *See* Decl. of B. Spears ¶ 6(m).  JTRE does not dispute that it failed to repair the leaks.  In response to Capital One's interrogatory, JTRE could not identify any steps it undertook to repair the roof leaks.  *See* SUF ¶ 84.  Moreover, when asked at deposition, JTRE could not identify any evidence to show that the

---

[1] JTRE's obligation under Section 10.2 of the Lease is consistent with its obligation under Section 5.15 of the Condo Declaration, which required that: "Each Unit shall be Maintained in good order and repair . . . by the Unit Owner thereof at its sole cost and expense."  *See* Decl. of B. Spears ¶ 5(d), Ex. 5 § 5.15.  Unit C1, which JTRE owns, is defined to include "the Roof which exclusively serves such Unit."  *See id.* ¶ 5(d), Ex. 5 § 6.2.6.  The undisputed expert testimony is that "[t]he Dome portion of the roof serves only The Bank."  *See id.* ¶ 6(m), Ex. 21 p. 1.  Therefore, even under the Condo Declaration, JTRE was obligated to repair the roof leaks.

roof was fixed.  *See id.* ¶ 85.  Thus, there is no genuine dispute of fact that the roof leaked and that JTRE failed to repair it.

### C.      There is no dispute that JTRE received notice of the roof leaks and *agreed* with Capital One's complaints.

It is also undisputed that JTRE received Capital One's multiple notices of the roof leaks, and that JTRE agreed with Capital One's allegations.  On October 19, 2018, Capital One sent JTRE notice of JTRE's "roof leakage emanating from that certain portion of the Demised Premises commonly known as the dome," which violated Sections 10.2 and 10.4 of the Lease.  *See id.* ¶ 86. JTRE undisputedly received Capital One's notice and undertook an investigation.  *See id.* ¶ 87. As a result of its investigation, JTRE *agreed* with Capital One about the roof leak.  *See id.* ¶ 88.

On December 20, 2018, Capital One sent another notice to JTRE through counsel.  *See id.* ¶ 89.  Capital One again notified JTRE that "the roof is leaking into the Lease Space," in violation of Sections 8.3, 10.2 and 10.4 of the Lease.  *See id.*  JTRE reviewed this notice and *agreed* with Capital One's allegations.  *See id.* ¶ 90.

On July 19, 2019, Capital One sent another notice to JTRE through counsel.  *See id.* ¶ 91. The notice memorialized additional leaks that occurred on February 14, 15, and 18, 2019, and July 12, 15, 16, 17, and 18, 2019.  *See id.*  There is no dispute that JTRE received this notice.  *See id.* ¶ 92.  Moreover, JTRE once again *agreed* with Capital One's allegations that the roof leaks had damaged the property.  *See id.*

On January 8, 2020, Capital One sent another notice to JTRE through counsel.  *See id.* ¶ 93.  The notice memorialized additional leaks that occurred on December 3, 11, and 14, 2019, and advised that "JTRE is responsible for remedying these leaks" under Section 10.2 of the Lease.  *See id.*  It is undisputed that JTRE received this notice.  *See id.* ¶ 9943.  And, as before, JTRE *agreed* with Capital One's allegations.  *See id.*

On February 25, 2020, Capital One sent a final notice to JTRE through counsel. *See id.* ¶ 95. The notice summarized the roof leaks and reiterated JTRE's violations of Sections 8.3, 10.2, and 10.4 of the Lease. *See id.* It is undisputed that JTRE received this notice. *See id.* ¶ 96. Finally, as with each of Capital One's multiple notices, JTRE *agreed* with Capital One's allegations. *See id.*

\* \* \*

As demonstrated, there is no genuine dispute of material fact that JTRE breached its contractual obligations in Sections 8.3, 10.2, 10.4, and 12.2(a) of the Lease by failing to repair the roof leaks. Nor is there any genuine dispute that JTRE received multiple notices of its breach, that it agreed with the allegations in each of the notices, and that it failed to cure. Therefore, Capital One is entitled to partial judgment as a matter of law that JTRE is liable for the breach of contract counterclaim based on its failure to repair the roof leaks.

### III. JTRE Undisputedly Breached Sections 29 and 34.1 of the Lease by Allowing Disruptive Construction During Business Hours and Causing the Bank to Close.

There is no genuine dispute of fact that JTRE breached Sections 29 and 34.1 of the Lease. In Section 29, JTRE covenanted that "[Capital One] shall peaceably and quietly have, hold and enjoy the Premises[.]" *See id.* ¶ 97. In Section 34.1, JTRE promised that "any work that would materially adversely affect the conduct of [Capital One's] business in the Premises such that [Capital One] can no longer reasonably operate its business within the Premises pursuant to this Lease shall be performed after normal business hours." *See id.* ¶ 98. Construction by the neighboring condo owner, Slate,[2] repeatedly interfered with Capital One's quiet enjoyment of, and ability to operate in, the Manhattan Avenue Building.

---

[2] "Slate" is the trade name for 807 Manhattan Avenue Holding LLC and its affiliate 807 Manhattan Avenue LLC.

**A.     Capital One was undisputedly forced to close the branch on November 2, 2018.**

On November 2, 2018, the branch closed "due [to] a strong odor throughout the branch stemming from [the] work being done on the roof." *See id.* ¶ 100.  The facility manager advised JTRE and Slate: "Customers in the atm and bank employees are complaining of a smell that is making them light headed.  Not sure what you[] are using but whatever it is is not suitable for a daytime project with tenants in the building." *See id.*  On December 20, 2018, Capital One notified JTRE that it had defaulted under Sections 29 and 34.1 based on the "shut-down of the branch" and JTRE's "fail[ure] to ensure that any disruptive work . . . be done after hours so as not to interrupt the Bank's business operations." *See id.* ¶ 101.  JTRE reviewed this notice and *agreed* with Capital One's allegations.  *See id.* ¶ 102.

**B.     Capital One was undisputedly forced to close the branch on February 26, 2019.**

On February 26, 2019, the facility manager issued an emergency alert for an "[u]nknown odor throughout the branch" that "smells of either gas or lead." *See id.* ¶ 103.  The odor was "caused by Slate's construction" and required the branch to close.  *See id.*  On July 19, 2019, Capital One notified JTRE that "[t]he Bank had to close the branch as a result of the odor that was making employees ill." *See id.* ¶ 104.  There is no dispute that JTRE received this notice.  *See id.* ¶ 105.

**C.     Capital One was undisputedly forced to close the branch on July 17, 2019.**

On July 17, 2019, the branch manager reported: "[T]here are workers working next door to the branch and the noise is an inconvenience to our customers.  It is disrupting our customers['] service, I am not able to hear the customer sitting right next to me.  Customers are also very upset and complaining.  This needs to be resolved as soon as possible so we can continue to deliver great customer service." *See id.* ¶ 106.  On the same day, a significant amount of rain entered the building through a hole in the roof, which prevented the branch from opening the following day.

11

*See id.* ¶ 107.  Slate admitted that the hole had occurred when it "demoed" the roof a few days earlier.  *See id.*  Two days later, Capital One notified JTRE of the default caused by "loud rumblings and vibrations" and "constant leaks."  *See id.* ¶ 108.  JTRE undisputedly received a copy of Capital One's notice.  *See id.* ¶ 109.

### D.    Capital One was undisputedly forced to shut down the ATMs on July 23, 2019.

On July 23, 2019, Capital One was forced to shut down the ATM machines because of the extensive water that leaked through the hole in the roof that Slate had caused during its earlier construction.  *See id.* ¶ 110.  There is no dispute that JTRE received notice of the partial closure. *See id.* ¶ 111.

\* \* \*

As demonstrated, there is no genuine dispute of fact that JTRE breached its contractual obligations in Sections 29 and 34.1 of the Lease by failing to ensure Capital One's quiet enjoyment and that any construction was performed after normal business hours.  Nor is there any genuine dispute that JTRE received notices of its breaches and failed to cure them.  Therefore, Capital One is entitled to partial judgment as a matter of law that JTRE is liable for the breach of contract counterclaim based on its failure to adhere to its covenants in Sections 29 and 34.1.

### IV.   JTRE Undisputedly Breached Section 21.1 of the Lease by Failing to Reimburse Capital One.

There is no genuine dispute of fact that JTRE breached Section 21.1 of the Lease by failing to reimburse Capital One's costs of curing certain defaults.  Section 21.1 provides: "[JTRE] shall pay [Capital One], upon demand, all costs, expenses, and disbursements incurred by [Capital One] to cure [JTRE's] Default, including costs and reasonable attorneys' fees."  *See id.* ¶ 112.  Above, Capital One has established JTRE's numerous defaults and its failure to cure them.

Capital One undisputedly cured some of JTRE's defaults on its own.  For instance, Capital One paid Charel Contracting & Maintenance Company, Inc. ("Charel") $9,526.56 to repair a portion of the leaking roof.  *See id.* ¶ 113.  Capital One also paid Gregor Industries, Inc. ("Gregor") $91,770 for temporary heat during the cold season of 2018-2019, and another $28,000 for temporary heat during the cold season of 2019-2020.  *See id.* ¶ 115.  It is undisputed that Capital One sent written demands for reimbursement of these costs on July 11, 2019 and February 25, 2020.  *See id.* ¶ 118.  It is also undisputed that JTRE received these cost statements.  *See id.* ¶¶ 119-20.  Nor is there any genuine dispute that Capital One's costs were reasonable.  *See id.* ¶ 117. Finally, JTRE admits that it failed to reimburse Capital One.  *See id.* ¶ 121.

* * *

As demonstrated, there is no genuine dispute of fact that JTRE breached its contractual obligation in Section 21.1 of the Lease by failing to reimburse Capital One.  Nor is there any genuine dispute that JTRE received notices of its breaches and failed to cure them.  Therefore, Capital One is entitled to partial judgment as a matter of law that JTRE is liable for the breach of contract counterclaim based on its failure to reimburse Capital One.

## V.    Because of Its Undisputed Breaches, JTRE Cannot Prevail on Its Breach of Contract Claim Against Capital One.

If the Court concludes, based on the above, that JTRE breached the Lease as a matter of law, then Capital One is entitled to summary judgment on JTRE's breach of contract claim.  Such a finding would preclude JTRE from proving a prima facie element of its claim: its own performance.[3]  *See Moreno-Godoy v. Kartagener*, 7 F.4th 78, 85 (2d Cir. 2021) ("To prevail on a

---

[3] JTRE agrees that this is a prima facie element of its claim.  *See* ECF No. 121 at 7.  Yet JTRE fails to proffer a scintilla of evidence that it performed its obligations under the Lease.  Tellingly, Jack Terzi could not include even a passing statement in his declaration to support this element of JTRE's claim.  *See generally* ECF No. 119.  This failure of proof alone is a sufficient reason to deny JTRE's motion.

breach-of-contract claim in New York, a plaintiff must prove," among other things, "performance by the party seeking recovery."); *Eastman Kodak Co. v. STWB Inc.*, 232 F. Supp. 2d 74, 97 (S.D.N.Y. 2002) ("Having failed to establish its own performance of its obligations under the Stock Purchase Agreement, Bayer cannot obtain relief from Kodak."); *Carrier Svcs., Inc. v. Omni Mail, Inc.*, No. 98 Civ. 9197 (CSH), 2000 WL 1072300, at *4 (S.D.N.Y. Aug. 3, 2000) ("In order to prevail on a breach of contract claim, Plaintiff must prove its own performance . . . ."). Therefore, because of JTRE's undisputed and numerous breaches of the Lease—all of which occurred long before Capital One stopped paying rent in July 2020—Capital One is entitled to summary judgment on JTRE's breach of contract claim.

## VI.   Capital One's Notices Were Valid.

Because it lacks a substantive defense, JTRE attacks the validity of Capital One's notices under Section 31 of the Lease. *See* ECF No. 121 at 10-11. According to JTRE, it is absolved from all liability because of: (i) the addresses on the notices; (ii) the alleged lack of a cure-by date; (iii) the alleged failure to use the word "default"; and (iv) the alleged failure to reserve the right to terminate. *See* ECF No. 121 at 10-11. Courts routinely reject these types of arguments as "hypertechnical in the extreme." *Rockland Exposition, Inc. v. Alliance of Auto. Svc. Providers*, 706 F. Supp. 2d 350, 360 (S.D.N.Y. 2009). "As put by the Second Circuit, a notice provision should not be construed 'as if it were a common law pleading requirement under which every slip would be fatal.'" *MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 Civ. 1615(CM), 2012 WL 1107648, at *10 (S.D.N.Y. Mar. 30, 2012) (quoting *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 925 (2d Cir. 1977)). Capital One will first explain why strict compliance does not apply, and then explain why its notices were valid even under strict compliance.

**A.      New York law does not require strict compliance with a notice provision where, as here, the recipient received actual notice and claims no prejudice.**

JTRE erroneously argues that strict compliance with Section 31 of the Lease was required. It specifically contends that Capital One's February 25, 2020 notice of termination was invalid because it was sent to JTRE through its counsel instead of to JTRE directly. *See* ECF No. 121 at 12. As Judge Caproni observed: "Plaintiffs' assertion that Defendant did not properly terminate the Lease early is, to put it charitably, interesting." *JTRE Manhattan Avenue LLC v. Capital One, N.A.*, No. 21-CV5714 (VEC), 2022 WL 2901402, at *3 (S.D.N.Y. July 22, 2022). Judge Caproni was rightly skeptical because JTRE relies on the wrong rule of decision for its argument.

The applicable rule of decision is well-settled. "Under New York law, strict compliance with contractual notice provisions need not be enforced where the adversary party does not claim the absence of actual notice or prejudice by the deviation." *Schweizer v. Sikorsky Aircraft Corp.*, 634 F. App'x 827, 829 (2d Cir. 2015) (internal quotation marks omitted); *Vista Outdoor Inc. v. Reeves Family Tr.*, 725 F. App'x 17, 23 (2d Cir. 2015) (rejecting strict compliance argument because the recipient "received notice . . . and it does not contend that it was prejudiced"); *Thor 680 Madison Ave. LLC v. Qatar Luxury Grp. S.P.C.*, No. 17 Civ. 8528 (PGG), 2020 WL 2748496, at *12 (S.D.N.Y. May 27, 2020) ("Strict compliance with a contract's notice provision is generally not required where the adverse party received actual notice and suffered no prejudice."); *Suarez v. Ingalls*, 282 A.D.2d 599, 599-600 (N.Y. App. Div. 2d Dep't 2001) ("Strict compliance with the contract notice provisions was not required because the plaintiff does not claim that she did not receive actual notice, or was prejudiced by the deviation."); *Ives v. Mars Metal Corp.*, 196 N.Y.S. 2d 247, 249 (N.Y. Sup. Ct. 1959) ("Where actual notice of termination has in fact been given, the form is of little import, and the fact that notice was sent to counsel instead of directly to Barco would not invalidate its effect.").

15

Here, it is undisputed that JTRE actually received Capital One's notice of termination. *See* SUF ¶¶ 67, 95, 120. In fact, JTRE received all of Capital One's notices. *See id.* ¶ 59, 61, 63, 65, 67. It is also undisputed that JTRE claims no prejudice resulting from Capital One's alleged deviation from the Lease's notice provision.[4] *See id.* ¶ 136. Given these undisputed facts, the applicable rule of New York law is that strict compliance with Section 31 of the Lease is not required.

JTRE erroneously relies on four cases in which notice was not actually received or the issue was disputed. *See* ECF No. 121 at 12-13 (citing *Brueckner v. You Can Beam LLC*, No. 20-CV3323 (JSR), 2021 WL 2158733 (S.D.N.Y. May 27, 2021); *LG Cap. Funding, LLC v. MineralRite Corp.*, No. 16 Civ. 6158 (PKC) (VMS), 2017 WL 9250297 (E.D.N.Y. Dec. 1, 2017); *A. Dubois & Son v. Goldsmith Bros.*, 273 A.D. 306 (N.Y. App. Div. 1st Dep't 1948); *Core Svcs. Grp., Inc. v. Teams Hous. Dev. Corp. Fund, Inc.*, No. 654438/2013, 2016 WL 4490626 (N.Y. Sup. Ct. Aug. 25, 2016)). If notice is not received, courts default to strict compliance of the notice provision. Here, by contrast, actual receipt is not in dispute, and therefore JTRE's cited cases do not apply.

Still, JTRE suggests that strict compliance is required where the termination of a lease is at issue. That is incorrect. In *Thor 725 8th Ave. LLC v. Goonetilleke*, 138 F. Supp. 3d 497, 509 (S.D.N.Y. 2015), as in this case, a commercial lease was terminated by notice allegedly sent to the wrong address. There, as here, it was "undisputed" that the notice was "actually and timely received." *Thor 725*, 138 F. Supp. 3d at 510. And although prejudice was claimed, Judge

---

[4] There could not possibly be any prejudice, because JTRE began marketing the Manhattan Avenue Building and re-listed it on CoStar (a commercial real estate listing database) within days of receiving Capital One's February 25, 2020 notice of termination. *See* SUF ¶¶ 134-35; *see also OneWest Bank, N.A. v. Rubio*, No. 14-CV-3800 (CS), 2015 WL 5037111, at *4 (S.D.N.Y. Aug. 26, 2015) (holding that strict compliance with notice provision was unnecessary where recipient "points to no prejudice he suffered from the defective notice").

Engelmayer found the claim to be unsupported.  *See id.* at 510-11.  He therefore awarded summary judgment to the party who terminated the lease.  *See id.* at 517; *see also CAI Rail, Inc. v. Badger Mining Corp.*, No. 20 Civ. 4644 (JPC), 2021 WL 705880, at \*5 (S.D.N.Y. Feb. 22, 2021) (awarding partial summary judgment to party that terminated lease even though notice of termination was not sent via a contractually specified method).  This Court should apply the same reasoning and award summary judgment to Capital One.

### B.    Capital One did not send its notices to the wrong address.

The first alleged defect with Capital One's notices is that they "were not properly served upon JTRE."  *See* ECF No. 121 at 10.  This argument is wrong for three reasons.

### i.    The Tenant Notice Letter did not change the Lease's notice address from Slate's address to JTRE's address.

The landlord's notice address in the Lease was never changed from Slate's address to JTRE's address.  Section 31.2 of the Lease required notices to be sent to "the addresses listed in the Notice Addresses section of the Key Provisions Summary or to another Addressee or at another address as designated by a party in a Notice pursuant to this Section 31."  *See* Decl. of R. Levitt ¶ 14, Ex. 3 § 31.2.  The "Notice Addresses section of the Key Provisions Summary" showed Slate's address, not JTRE's address.

JTRE does not contend that Capital One should have sent its notice to Slate, but it instead relies on the alternative portion of Section 31.2: "another address as designated by a party in a Notice pursuant to this Section 31."  *See id.* ¶ 14, Ex. 3 § 31.2.  JTRE argues that Slate's Tenant Notice Letter of May 29, 2018 designated JTRE's address as the new notice address under the Lease.  But the Tenant Notice Letter cannot withstand the strict compliance that JTRE asks the Court to apply.

Strictly construed, Section 31 of the Lease obligated Slate to address the Tenant Notice Letter to *1680* Capital One Drive in McLean, Virginia. *See id.* ¶ 14, Ex. 3 § 31.2. It is undisputed that the Tenant Notice Letter was incorrectly addressed to *680* Capital One Drive. *See* ECF No. 120 ¶ 27; *see also* Decl. of R. Levitt ¶ 21, Ex. 8. Therefore, if strict compliance with Section 31 was required (as JTRE argues), the Tenant Notice Letter was legally ineffective.

Setting that aside, the Tenant Notice Letter did not instruct Capital One to send future notices to JTRE's address at 362 Fifth Avenue. Instead, it explicitly instructed Capital One to send future notices to "such address as may be designated by [JTRE]."[5] *See* Decl. of R. Levitt ¶ 21, Ex. 8. JTRE has not produced a scintilla of evidence that it subsequently designated an address pursuant to the Tenant Notice Letter. Again, therefore, the Tenant Notice Letter did not operate to change the notice address under Section 31 of the Lease.

    ii.    *The parties' course of conduct proves that Capital One correctly sent notices to JTRE through counsel.*

Capital One properly sent notices and other correspondence to JTRE through counsel based on the parties' course of conduct. Between November 2018 and May 2020, Capital One exchanged over 200 communications with JTRE's various law firms. *See* Decl. of S. Calello ¶ 20. These communications included multiple notices. *See id.* ¶¶ 22-30. Not one of JTRE's attorneys or law firms told Capital One, or its counsel, to send any communications directly to JTRE. *See id.* ¶ 21. JTRE received the notices from its law firms. *See* SUF ¶¶ 59, 61, 63, 65, 67. Without a specifically designated notice address in the Lease, this course of conduct over seventeen months establishes the parties' agreement about how notices were to be sent.

---

[5] Jack Terzi and JTRE both misquote the Tenant Notice Letter. *See* ECF No. 119 ¶ 121; ECF No. 121 at 10.

       iii.    *Capital One properly complied with the instruction to send the notices of termination to Rivkin Radler.*

Rivkin Radler was the designated recipient for the February 25, 2020 and March 20, 2020 notices.  On January 15, 2020, six weeks before Capital One sent its notice of early termination, Rivkin Radler instructed Capital One that "all future correspondence relating to this matter should be directed to our office."  *See* SUF ¶ 27.  The word "all," as used by Rivkin Radler, "of course, means every, the whole amount or quantity of."  *Am. Home Prods. Corp. v. CAMBR Co.*, No. 00 Civ.2021 (VM), 2001 WL 79903, at *3 (S.D.N.Y. Jan. 30, 2001) (internal quotation marks and citation omitted).  The word "correspondence" means "communication by exchange of letters," *Random House Dictionary* at 455 (2d ed. 1987), which is exactly what Capital One's notice of early termination was.  Rivkin Radler sent its January 15, 2020 letter to Capital One at the express direction of JTRE and with JTRE's express authorization.  *See id.* ¶ 125.  Capital One complied with the unambiguous instruction to send the February 25, 2020 and March 20, 2020 notices to Rivkin Radler.  *See id.* ¶ 126.

**C.**    **Section 21.1 of the Lease prescribes the cure period.**

JTRE also argues that Capital One's notices were invalid because they "failed to specify a date in which JTRE was required to cure the defaults."  *See* ECF No. 121 at 11.  But nothing in Section 21.1 of the Lease obligated Capital One to provide such a date.  *See* Decl. of R. Levitt ¶ 14, Ex. 3 § 21.1.  Rather, Section 21.1 obligated JTRE to cure its defaults within "a reasonable period of time, but in no event later than thirty (30) days after [receiving the notice]."  *See id.* ¶ 14, Ex. 3 § 21.1.  Thus, JTRE was aware of its cure period, and this supposed defect in Capital One's notices does not render them invalid.

**D.      The Lease did not obligate Capital One to use the word "default" in its notices, but Capital One did so anyway.**

Next, JTRE argues that Capital One's notices were invalid because they "did not advise JTRE that such notice was, in fact, a default notice."  *See* ECF No. 121 at 11.  Once again, this supposed requirement is entirely fabricated.  Nothing in Section 21.1 of the Lease required Capital One to explicitly include the word "default" in its notices.  *See* Decl. of R. Levitt ¶ 14, Ex. 3 § 21.1.  Regardless, many of Capital One's notices included the word "default" and otherwise informed JTRE that it was in breach.  *See* Decl. of R. Levitt ¶ 23, Ex. 9 ("Please be advised that this letter shall serve as formal notice of Landlord's failure to meet its contractual obligations[.]"); Decl. of S. Calello ¶ 22, Ex. 6 ("[T]his shall constitute the Bank's Fourth Notice of Default[.]"); *id.* ¶ 24, Ex. 8 ("As suggested by the title to this letter as the *fifth* notice of default, the Bank's multiple attempts to prompt JTRE to address the Property Issues and pay the Cost Statement have not been successful . . . .") (emphasis in original); *id.* ¶ 28, Ex. 12 ("These defaults have been ongoing and remain uncured."); *id.* ¶ 29, Ex. 13 ("Pursuant to Section 21.1 of the Lease, JTRE's failure to cure its many defaults after the expiration of any reasonable cure period grants the Bank the right to terminate the Lease[.]").  This manufactured defect does not render Capital One's notices invalid.

**E.      The Lease did not obligate Capital One to expressly reserve its right to terminate the Lease in its notices, but Capital One did so anyway.**

Finally, JTRE argues that Capital One's notices were invalid because they "[d]id not advise[] JTRE that . . . Capital One reserved its right to terminate the Lease[.]"  *See* ECF No. 121 at 11.  As with the other alleged defects, this one is made up of whole cloth.  Section 21.1 did not obligate Capital One to reserve its right to terminate.  To the contrary, the Lease already reserved that right for Capital One.  *See* Decl. of R. Levitt ¶ 14, Ex. 3 § 21.2 (providing that Capital One's "exercise of any right or remedy due to a Landlord's Default" shall not be deemed "to deprive

Tenant of its right to cancel or terminate this Lease").  In any event, many of Capital One's notices included the following reservation of rights: "Nothing contained in this letter is a waiver of any other defaults that may exist, or a waiver of any of the Bank's rights and remedies, all of which are hereby reserved."[6]  *See* Decl. of S. Calello ¶ 22, Ex. 6; *id.* ¶ 24, Ex. 8; *id.* ¶ 28, Ex. 12; *id.* ¶ 29, Ex. 13; *id.* ¶ 30, Ex. 14.  Therefore, JTRE's alleged defects in the notices lack merit.

## VII.    Even if JTRE Did Not Breach, Capital One Exercised Its Right to Change the Expiration Date to October 31, 2021.

Even assuming JTRE did not default on the Lease, Capital One cannot be liable for rent payments beyond October 2021.  JTRE does not dispute that Capital One provided timely notice that it was "exercising" its rights under Section 3.2.[7]  *See* SUF ¶¶ 128-30.  On February 25, 2020, about twenty months before the end of the sixth Lease year, Capital One sent Rivkin Radler the following notice:

> [T]his letter will serve as written notice of the Bank's right to early termination pursuant to Section 3.2 of the Lease.  Accordingly, even if JTRE disputes the Bank's right to terminate the Lease, *the Lease term expires no later than the end of the sixth lease year pursuant to Section 3.2.*[8]

---

[6] JTRE argues that Capital One elected its remedy by abating rent payments.  *See* ECF No. 121 at 11.  But the undisputed evidence is that Capital One paid all rent owed through the date of termination (i.e., June 30, 2020).  *See* Decl. of R. Levitt ¶ 63.  A mere reservation of the right to abate rent is not an election of remedies.  Regardless, the Lease allowed Capital One to exercise its remedies cumulatively, without one remedy affecting any other.  *See* Decl. of R. Levitt ¶ 14, Ex. 3 § 21.2.

[7] According to JTRE, the June 30, 2020 termination date is "mutually exclusive" of the October 31, 2021 expiration date.  *See* ECF No. 121 at 6.  That is incorrect.  The former is the date on which Capital One *terminated* the Lease for default, whereas the latter is the *expiration* date of the Lease that would apply regardless of any defaults or termination.  The termination date comfortably coexists with the expiration date, just as it would have even if Capital One had not exercised its right under Section 3.2.

[8] JTRE claims that it did not understand this statement to mean that Capital One was "exercising" its right under Section 3.2.  *See* ECF No. 121 at 13.  But that claim runs headlong into JTRE's own stipulation that the February 25, 2020 notice "asserted . . . that Capital One was *exercising* their early termination option to terminate the lease effective as of October 31, 2021."  ECF No. 120 ¶ 54 (emphasis added).  Regardless, the notice's unambiguous statement that "the Lease term expires no later than the end of the sixth lease year pursuant to Section 3.2" is not reasonably susceptible to any interpretation other than that Capital One exercised its contractual right.  Even if there were ambiguity, Capital One sent a second notice on March 20, 2020, reiterating that "the Bank has also validly exercised its early-termination option under Section 3.2 of the Lease."  *See* Decl. of S. Calello ¶ 30, Ex. 14.  JTRE's claim of confusion is disingenuous.

*See* Decl. of S. Calello ¶ 29, Ex. 13 (emphasis added).   Twenty-three minutes after receiving

Capital One's notice, Rivkin Radler forwarded it to JTRE.   *See* SUF ¶ 132; Decl. of B. Spears ¶

6(b), Ex. 10.   JTRE admits that it received the notice on February 25, 2020.   *See* SUF ¶¶ 67, 96,

120, 129-30.   Although JTRE challenges the validity of this notice, those challenges are resolved

above.   The Court is thus left with the unambiguous language of the Lease.

The "Lease Term" is expressly defined by reference to the "Expiration Date."   *See* Decl.

of R. Levitt ¶ 14, Ex. 3 § 3.1 ("The Lease Term shall commence on the Lease Commencement

Date and shall terminate at 11:59 p.m. on the *Expiration Date*.") (emphasis added).   Originally,

the "Expiration Date" was defined as: "The last day of the calendar month in which the twentieth

(20th) anniversary of the day immediately preceding the Rent Commencement Date occurs."   *See*

*id.* ¶ 14, Ex. 3 at Key Provisions Summary.   Under this definition, the Lease Term would have

extended through October 31, 2035, because the date of the last signature on the Lease was October

30, 2015.   *See id.* ¶ 14, Ex. 3 at 39.

Critically, however, the Expiration Date was subject to modification under Section 3.2 of

the Lease.   *See id.* ¶ 14, Ex. 3 § 3.2.   That provision gave Capital One the option to move up the

Expiration Date to the end of the sixth Lease year:

> 3.2 <u>Tenant Termination Right</u>.   Notwithstanding anything to the contrary contained
> in <u>Section 3.1</u> or elsewhere in this Lease, Tenant shall have the right to terminate
> this Lease effective as of the expiration of the sixth (6th) lease year of the Lease
> Term (the "<u>Early Termination Date</u>"), provided that Tenant delivers to Landlord
> written notice (the "<u>Early Termination Notice</u>") of such election not less than
> twelve (12) months prior to the Early Termination Date (the "<u>Notice Date</u>").   If
> Tenant timely delivers the Early Termination Notice on or before the Notice Date
> in accordance with this Lease, then this Lease shall terminate as of the Early
> Termination Date (***as if the Early Termination Date was the Expiration Date***
> ***under the Lease***), and neither party shall have any further obligation, other than
> those obligations which expressly survive the expiration of this Lease. . . .

*See id.* ¶ 14, Ex. 3 § 3.2 (emphasis added, and other emphasis omitted).   This unambiguous

provision makes clear that, upon Capital One's timely notice, the "Early Termination Date" and

the "Expiration Date" merge into October 31, 2021 (i.e., the end of the sixth Lease year). When that occurs, as it did here, the definition of "Lease Term" in Section 3.1 must be read as follows: "The Lease Term shall commence on the Lease Commencement Date and shall terminate at 11:59 p.m. on [October 31, 2021]."

Therefore, even if JTRE did not default on the Lease, Capital One should still be awarded partial summary judgment as to JTRE's claim for rent beyond October 31, 2021.

## VIII.   The Tenant Estoppel Certificate Does Not Absolve JTRE from Liability.

JTRE argues that the Tenant Estoppel Certificate immunizes it from all liability. *See* ECF No. 121 at 9. The Tenant Estoppel Certificate did not relieve JTRE of its obligations under Sections 8.3, 10.2, 10.4, 12.2, 21.1, 29, and 34.1 of the Lease. *See* Decl. of R. Levitt ¶ 20, Ex. 7. In fact, it did not relieve JTRE of *any* of its Lease obligations. *See id.* At most, the Tenant Estoppel Certificate released JTRE from liability for any "default" by the prior landlord. *See id.* A "Landlord Default" is a defined term, which requires "written notice from Tenant" and the landlord's "fail[ure] to perform or observe any of its obligations under this Lease after a reasonable period of time." *See* Decl. of R. Levitt ¶ 14, Ex. 3. Applying that definition, the prior landlord was never in default. Capital One sent one notice on April 13, 2018, in which it asked the prior landlord to stop drilling. *See* SUF ¶ 12. The prior landlord complied, and Capital One issued a notice of cure five days later. *See* SUF ¶¶ 13-15. Thus, in May 2018, when Capital One executed the Tenant Estoppel Certificate and JTRE bought the Manhattan Avenue Building, the prior landlord was not in default. In short, the Tenant Estoppel Certificate does not relieve JTRE of any liability for its breaches of the Lease. The Court should reject this defense.

## IX.   The Lease Did Not Obligate Capital One to Remove JTRE's Vaults.

The Court should award summary judgment to Capital One on JTRE's claim that the Lease obligated Capital One to remove JTRE's vaults from the Manhattan Avenue Building. The Lease

does not mention the vaults.  *See generally* Decl. of R. Levitt ¶ 14, Ex. 3.  Nevertheless, JTRE points to Section 14, which required Capital One to remove "its trade fixtures, security deposit box assemblies, ATMs, signs, and all other personal and/or proprietary property . . . ."  *See id.* ¶ 14, Ex. 3 § 14.  JTRE argues that the vaults are "trade fixtures" to be removed by Capital One.

The term "trade fixtures" is not defined in the Lease.  Under the common law definition, a piece of equipment is not a "trade fixture" unless it was "installed by a tenant during its lease term."  *E. Side Car Wash, Inc. v. K.R.K. Capitol, Inc.*, 102 A.D.2d 157, 162 (N.Y. App. Div. 1st Dep't 1984); *see also Bergh v. Herring-Hall-Marvin Safe Co.*, 136 F. 368, 373 (2d Cir. 1905) (distinguishing "realty, such as . . . bank vaults" from "trade fixtures, which are capable of being removed without injury to the freehold").

Here, it is undisputed that Capital One did not install the vaults, which pre-dated Capital One's tenancy.  *See* SUF ¶¶ 5-7.  As such, JTRE took title to the vaults as part of the realty that it acquired from 807 Manhattan Avenue Holding LLC.  *See id.* ¶ 18.  Thus, Capital One had neither the right nor the obligation to remove and take possession of JTRE's vaults when it vacated the Manhattan Avenue Building in June 2020.

Even if Capital One did hold title to the vaults, which it did not, JTRE's contractual remedy was to obtain that title from Capital One.  Section 14 of the Lease provides that, "[a]t the expiration of the Lease Term," the trade fixtures remaining in the Manhattan Avenue Building "shall become Landlord's sole property, free and clear of any and all claims of Tenant."  *See* Decl. of R. Levitt ¶ 14, Ex. 3 § 14.  JTRE cannot obtain title to the vaults while also demanding compensatory damages for their removal.[9]

---

[9] Capital One previously moved to exclude JTRE's expert witness, James Robinson, who opined about the cost of removing the vaults.  *See* ECF No. 113.  The exclusion of that opinion would also entitle Capital One to summary judgment on the vault issue, because it would leave JTRE without any competent evidence as to its purported damages.

## CONCLUSION

For the reasons discussed, the Court should grant Capital One's motion, enter judgment for Capital One on JTRE's claim, and enter partial judgment for Capital One as to liability on its counterclaim.

Dated: March 14, 2023

Respectfully submitted,
CAPITAL ONE, N.A.
*By Counsel*

 *s/ John D. Wilburn*
John D. Wilburn (*Pro Hac Vice*)
Brooks H. Spears (*Pro Hac Vice*)
MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102
Phone: (703) 712-5000
Fax: (703) 712-5282
jwilburn@mcguirewoods.com
bspears@mcguirewoods.com

Bryan A. Fratkin (*Pro Hac Vice*)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Phone: (804) 775-1000
Fax: (804) 775-1061
bfratkin@mcguirewoods.com

Anastasia P. Cordova
MCGUIREWOODS LLP
1345 Avenue of the Americas, 20th Floor
New York, NY 10020
Phone: (212) 548-2100
Fax: (212) 548-2150
acordova@mcguirewoods.com

Sheila E. Calello
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Phone: (973) 639-6931
Fax: (973) 624-7070
scalello@mccarter.com

26

## CERTIFICATE OF SERVICE

I certify that, on March 14, 2023, I caused the foregoing to be electronically filed on the

Court's CM/ECF system, which will send notice to all counsel of record.

*s/ John D. Wilburn*