**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

JTRE MANHATTAN AVENUE LLC and JTRE 807 MANHATTAN AVENUE LLC,

*Plaintiffs/Counter-Defendants*,

v.

CAPITAL ONE, N.A.,

*Defendant/Counterclaimant*.

Case No. 1:21CV5714 (JLR)

**DEFENDANT/COUNTERCLAIMANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant/Counterclaimant Capital One, N.A. ("Capital One"), pursuant Local Civil Rule 7.1(a)(2) and 7.1(b), submits this reply memorandum in support of its motion for summary judgment ("Motion").

## INTRODUCTION

In responding to the Motion, Plaintiffs/Counter-Defendants JTRE Manhattan Avenue LLC and JTRE 807 Manhattan Avenue LLC (collectively, "JTRE") had an obligation to counter Capital One's argument with evidence and facts. JTRE's response falls short of this requirement and, instead, relies on conclusory averments or its prior submissions to the Court. Nor does it address the mountain of evidence and cases Capital One introduced in support of the Motion. In short, JTRE has failed to produce a response sufficient to defeat the Motion or show a genuine dispute as to a material fact. Thus, Capital One is entitled to summary judgment in its favor.

First, JTRE argues that it did not violate the Lease provisions by failing to provide adequate heat because it did not have a specific requirement to guarantee a minimum indoor temperature. JTRE also maintains that the NYC Building Code, which does mandate a threshold temperature,

does not apply or cannot be enforced against JTRE in this action. JTRE also claims that the Lease requires only that it undertake "commercially reasonable efforts" to maintain the premises and, whether JTRE's efforts were reasonable, is an issue of fact. In support of these arguments, JTRE presents absolutely *no evidence* and merely relies on conclusions. Nor does it address in any way Capital One's expert opinions and the admissions of its own personnel regarding the requirements (and violations) to provide adequate heat. Capital One offered evidence in the form of expert opinion and witness testimony establishing that JTRE was required to comply with the minimum temperature requirements of the NYC Building Code—a fact that even JTRE's own representatives admitted. JTRE has not offered any facts or opinion in contravention and, as such, has not met its burden in opposing the Motion.

Second, with respect to roof leaks, JTRE claims that it was not required to repair those leaks because they were caused by third parties or occurrences outside of JTRE's control. As for its own obligations, JTRE again argues that it only had to undertake "commercially reasonable" efforts. Again, this argument is not supported by evidence and does not contravene the evidence presented by Capital One that JTRE was required to repair the roof and that it failed to do so.

Third, like its argument about roof leaks, JTRE argues that a third party—Slate—had the responsibility to ensure that no disruptive construction interfered with Capital One's operations and that JTRE was only bound by "commercially reasonable" standards. Again, however, JTRE does not set forth any evidence to refute Capital One's arguments.

Fourth, JTRE contends that Capital One's closures occasioned by JTRE's breaches of the lease are irrelevant because Capital One allegedly admitted in an email that all issues were corrected in January 2020 and could not support a Lease termination in February 2020. A reading

of the complete email exchange on this issue shows without a doubt that the parties were discussing an isolated incident and not the overarching issues JTRE refused to address on the premises.

Fifth, JTRE concludes without any support that it was simply not responsible for reimbursing Capital One for any out-of-pocket expenses caused by its failure to repair. The Lease, however, directly contradicts this contention.

Lastly, JTRE continues to argue that Capital One's notices of termination were improper despite the case law Capital One cited in the Motion which establishes that strict compliance with contract notice provisions is not required when the receiving party gets actual notice. JTRE neither distinguishes those cases nor alleges that it did not receive the notices. As such, again, JTRE has failed to carry its burden on summary judgment.

As discussed more fully below, JTRE has failed to put forth arguments sufficient to defeat the Motion, and the Motion should be granted as a result.

**ARGUMENT**

While, on a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant, *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998), "mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment." *Warren v. Bealey*, No. 9:12-CV-1318 (TJM/RFT), 2014 U.S. Dist. LEXIS 132787, at *4 (N.D.N.Y. July 28, 2014) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)). Here, JTRE's response to the Motion lacks factual support and falls back on mere conclusions.

## I. JTRE Has Not Refuted the Evidence Establishing that It Breached Sections 8.3, 10.4, and 12.2(a) of the Lease by Failing to Provide Adequate Heat.

JTRE does not dispute that it was required to operate the building "in accordance with the Comparable Building Standard." Opp. at 3, ECF No. 133. Rather, JTRE contends that this

standard was some general, undefined principle requiring compliance with industry practices but, at the same time, not containing any specific mandates regarding heat. *Id.* Capital One provided testimony of Randy Levitt, who stated that the industry standard corresponding to the "Comparable Building Standard" under the Lease ties into the NYC Business Code, which, in turn sets forth a minimum indoor temperature of 68°F. *See* SUF ⁋ 40; NYC Building Code § 1204.1. Additionally, Capital One's HVAC's expert, Christopher J. Sheridan, also opined that 68°F is the lowest acceptable temperature that is mandated by the NYC Building Code. *Id.* ⁋ 44. What's more, JTRE's own personnel agreed that the Comparable Building Standard entailed "certain temperatures in the winter and certain temperatures in the summer." *Id.* ⁋ 45.a. JTRE fails to rebut this evidence and, instead, relies on mere conclusions that the NYC Building Code does not apply, or that the "Comparable Building Standard" does not contain a temperature requirement. These conclusions are not sufficient.[1] Thus, JTRE was bound by more than just a requirement to undertake "commercially reasonable efforts." Rather, it had to comply with a specific requirement of the Comparable Building Standard, which dictated a certain minimum temperature. JTRE does not deny that it failed to do so.

## II. JTRE Failed to Rebut Capital One's Evidence That It Breached Sections 8.3, 10.2, 10.4, and 12.2(a) of the Lease by Failing to Repair the Roof Leaks.

Again, JTRE does not dispute that the Lease required it to "keep, maintain, and replace . . . the roof, roof membrane, [and] roof covering" and to further maintain the Manhattan Avenue Building in compliance with the Comparable Building Standard. SUF ⁋⁋ 69-71. According to the testimony of Capital One's witnesses, the Comparable Building Standard included the industry practice to promptly repair roof leaks. *Id.* ⁋ 72. JTRE also does not dispute that the roof had

[1] Contrary to JTRE's position, Capital One is not trying to enforce the NYC Building Code against it but, rather, the requirements of the NYC Building Code that are impliedly written into the "Comparable Building Standard" found in the Lease, which JTRE admits it was bound to follow.

several deficiencies. *Id.* ¶ 74-82, 92. JTRE refutes none of this evidence with any exhibits or testimony of its own. Instead, without any factual support, it argues in conclusory fashion that it was not required to repair any problems caused by other parties or that were outside of its control. *See* Opp. at 5, ECF No. 133. Such conclusory allegations are inadequate to defeat the Motion.

**III. JTRE Has Not Shown That Issues of Fact Exist as to Its Breaches of Sections 29 and 34.1 of the Lease by Allowing Disruptive Construction During Business Hours and Causing Capital One to Close.**

Once again, JTRE does not contest that it covenanted that "[Capital One] shall peaceably and quietly have, hold and enjoy the Premises" (SUF ¶ 97) and that "any work that would materially adversely affect the conduct of [Capital One's] business in the Premises such that [Capital One] can no longer reasonably operate its business within the Premises pursuant to this Lease shall be performed after normal business hours" (*Id.* ¶ 98). JTRE also does not dispute that construction Slate performed repeatedly interfered with Capital One's quiet enjoyment of, and ability to operate in, the Manhattan Avenue Building. JTRE does not deny that Slate interfered with Capital One's operations and engaged in construction outside of business hours. Instead, JTRE points to the provisions of the Lease where Capital One acknowledged that the Landlord would engage in construction. Opp. at 6, ECF No. 133. This acknowledgment, however, has nothing to do with JTRE's obligation, as noted above, to ensure that the construction would not affect Capital One adversely and that it would occur outside of business hours. The two provisions are not mutually exclusive. While JTRE attempts to detract from its obligations by noting that Capital One knew that potentially disruptive construction would occur, it does not offer an iota of evidence that it either attempted to ensure that Capital One's operations would not be disrupted, or that it used *any* effort to ensure Slate's construction occurred only after hours.

To muddy the waters further, JTRE appears to argue that it was not required to do anything at all because Slate's work did not make it impossible for Capital One to occupy the premises.

Opp. at 6, ECF No. 133. Again, it offers no factual support for this argument, which is baffling in light of Capital One's multiple documented closures on account of Slate's disruptive construction.

## IV. JTRE Has Failed to Establish That Capital One's Closures Did Not Serve as Grounds for Lease Termination.

JTRE does not challenge Capital One's four closures in 2018 and 2019 as a result of Slate's construction. Instead, JTRE argues that these closures could not have constituted a basis for a Lease termination because an email that Capital One sent relating to a leak that occurred on January 2, 2020.[2] Opp. at 6-7, ECF No. 133; ECF No. 132, Ex. 38. At the end of the exchange, Capital One's representative Randy Levitt states that "all is corrected/no issue." *Id.* Based on these exchanges, JTRE makes a sweeping conclusion that Mr. Levitt was not only referring to the leak occurring specifically on January 2, 2020, which prompted the email exchange, but is also somehow confirming that *all* issues created by JTRE and/or Slate's conduct over the years had been corrected. The exchange simply does not say that, and JTRE fails to provide any further support for its outlandish conclusion.

## V. JTRE Has Not Refuted the Argument That It Breached Section 21.1 of the Lease by Failing to Reimburse Capital One.

Section 21.1 of the Lease unequivocally provides that "[JTRE] shall pay [Capital One], upon demand, all costs, expenses, and disbursements incurred by [Capital One] to cure [JTRE's] Default, including costs and reasonable attorneys' fees." *See* SUF ¶ 112. Capital One produced evidence, which remains undisputed, that it cured some of JTRE's defaults on its own, incurring significant out-of-pocket repair costs. *See id.* ¶¶ 113, 115. JTRE also does not dispute that Capital One sent written demands for reimbursement of these costs. *See id.* ¶ 118. Nevertheless, without any citation to the record or any other evidence, JTRE merely states that it was not required under

[2] This is not one of the leaks that forms the basis for Capital One's summary judgment motion. *See* ECF No. 123 at 9-10.

the Lease to reimburse Capital One. Opp. at 7, ECF No. 133. This conclusory response is inadequate on summary judgment review.

## VI. JTRE Has Failed to Overcome the Evidence and Caselaw Establishing That Capital One's Notices Were Valid.

JTRE continues to argue that Capital One's notices of termination of the Lease were improper because they were not sent to the parties designated in the Lease. Opp. at 7-8, ECF No. 133. This argument just parrots JTRE's other briefing without addressing the extensive caselaw Capital One cited in the Motion, all of which establishes that strict compliance with notice provisions is not required when there is no dispute that notice was actually received. Nor does JTRE address Capital One's other arguments, including that the notices were in accordance with the parties' prior conduct, that Capital One communicated with Rifkin Radler pursuant to the law firm's specific instructions on behalf of JTRE, or that the Tenant Notice Letter did not change the notice address. Because JTRE fails to properly respond to Capital One's arguments and supporting authorities, it has failed to meet its burden and Capital One should be awarded summary judgment.

## CONCLUSION

For the reasons discussed, and for those set forth in the Motion, the Court should grant Capital One's Motion, enter judgment for Capital One on JTRE's claim, and enter partial judgment for Capital One as to liability on its counterclaim.

Dated: April 3, 2023

Respectfully submitted,
CAPITAL ONE, N.A.
*By Counsel*

*s/ John D. Wilburn*

John D. Wilburn (*Pro Hac Vice*)
Brooks H. Spears (*Pro Hac Vice*)
MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102
Phone: (703) 712-5000
Fax: (703) 712-5282
jwilburn@mcguirewoods.com
bspears@mcguirewoods.com

Bryan A. Fratkin (*Pro Hac Vice*)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Phone: (804) 775-1000
Fax: (804) 775-1061
bfratkin@mcguirewoods.com

Anastasia P. Cordova
MCGUIREWOODS LLP
1251 Avenue of the Americas, 20th Floor
New York, NY 10020
Phone: (212) 548-2100
Fax: (212) 548-2150
acordova@mcguirewoods.com

Sheila E. Calello
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Phone: (973) 639-6931
Fax: (973) 624-7070
scalello@mccarter.com

**CERTIFICATE OF SERVICE**

I certify that, on April 3, 2023, I caused the foregoing to be electronically filed on the Court's CM/ECF system, which will send notice to all counsel of record.

*s/ John D. Wilburn*